IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

HENRY LEE TUCKER,
#185861,

    **Plaintiff**

v.                                      Civil Action No. 2:06-CV-813-WKW

GLORIA WHEELER,

    **Defendant**

## SUPPLEMENTAL SPECIAL REPORT OF DEFENDANT GLORIA WHEELER

Comes now Defendant Gloria Wheeler, by and through counsel, Troy King, Attorney General of Alabama and Jack Wallace, Jr., Assistant Attorney General, to submit this supplemental special report pursuant to the order of the Court dated 23 July 2007.

## PARTIES

1. The Plaintiff, Henry Lee Tucker, #185861, is an Alabama Department of Corrections inmate, incarcerated at the Ventress Correctional Facility in Clayton, Alabama.

2. The Defendant, Gloria Wheeler, is employed by the Alabama Department of Corrections as a Correctional Officer I at the Ventress Correctional Facility in Clayton, Alabama.

## PLAINTIFF'S ALLEGATIONS

The Plaintiff alleges that he was physically abused by the Defendant, Correctional Officer Wheeler, who struck the Plaintiff with her baton. The Plaintiff stated in his complaint that:

> I were on the side walk when Ms. Wheeler address me as "Sissy, sissy, get up." I got up and start too walk off. Ms Wheeler call me back. I turn around and she approach me. When she approach me she grab me in my collar. I put my hand behind my back. Ms Wheeler then pull her stick out and hit me several times. Ms McCloud walk up and hand cuff me and took me too the shift office.

## DEFENDANT'S RESPONSE TO ALLEGATIONS

1. Defendant denies the use of excessive force.

2. Defendant asserts that she only used the necessary amount of force against Plaintiff in good faith to restore order and maintain discipline.

3. The Plaintiff failed to state a claim upon which relief can be granted pursuant to 42 USC §1983 or any other cause of action.

4. Defendant asserts that there is no evidence to support Tucker's claims.

5. Defendant asserts that Tucker has suffered only de minimus injuries.

6. Defendants assert Plaintiff has failed to show there is any genuine issue of material fact in this case.

7. Defendant denies that she violated the Plaintiff's right to be free of cruel and unusual punishment provided in the Eighth and Fourteenth Amendments.

8. Defendant denies all material allegations not expressly admitted herein and demands strict proof thereof.

9. Defendant asserts immunity pursuant to Article 1, Section 14 of the Constitution of Alabama 1901 and the Eleventh Amendment to the United States Constitution.

10. Defendant asserts qualified immunity.

11. Defendant asserts State-Agent discretionary immunity.

12. Defendant asserts immunity pursuant to Ala. Code, 1975, § 6-5-338.

## DEFENDANT'S EXHIBITS[1]

In accordance with this Court's Order, the Defendant submits the following exhibits as evidence in his case.

1. Exhibit 1, Affidavit of Defendant Gloria Wheeler

2. Exhibit 2, Affidavit of Correctional Officer Lizzie McLeod

3. Exhibit 3, Incident Report, VCF 06-027, dated 6 June 2006[2].

4. Exhibit 4, PHS Emergency form, dated 8 June 2006

5. Exhibit 5, Affidavit of Custodian of Records at Ventress CF

## STATEMENT OF THE FACTS

Defendant Wheeler states in her affidavit, Exhibit 1, that:

> On June 8, 2006 at approximately 8:10 a.m., I was assigned as a Yard Rover. I observed inmate Henry Tucker, B/185861 lying down in the middle of the sidewalk near #6 front porch. I gave inmate Tucker a direct order to get up from the sidewalk three or four times. Inmate Tucker failed to comply with my order. Inmate Tucker continued

---

[1] Defense Exhibits 1-5 were submitted with Doc 11 (Special Report) and are incorporated by reference as if fully set out herein.
[2] There is a discrepancy between the dates appearing on the face of the Incident Report, VCF 06-027. In Block 2, Date, the date of the incident is stated as 6 June 2006. In Block 15, Narrative Summary, the date of the incident is stated as 8 June 2006, which is consistent with the date stated in the PHS Emergency form. In the block captioned Admission Date, the Emergency form states that the Plaintiff was taken to the medical clinic on 8 June 2006. The Plaintiff states the date as 8 June 2006 in his complaint.

>to lie in the middle of the sidewalk stating to me in a derogatory manner, "My name is Henry James Tucker." Officer Lizzie McLeod order inmate Tucker to get up. Inmate Tucker finally complied with the order but began using profanity to other inmates stating, "Man, I ain't thinking about that mother fucking shit she's talking about." Inmate Tucker continued to make derogatory statements to me. I ordered inmate Tucker to report to me. Inmate Tucker refused to comply with the order and continued walking toward Dorm #3. I caught up with inmate Tucker and grasped inmate Tucker by the shirttail to stop him. Inmate Tucker turned away from me. As inmate Tucker turned away he used both hands to strike my left arm. Inmate Tucker pushed away from me in a violent manner. I drew my baton from my holster and struck inmate Tucker twice to inmate Tucker's common peroneal area. Inmate Tucker continued to resist. I then struck inmate Tucker in the upper left arm. Inmate Tucker stopped resisting at this point. Officer Lizzie McLeod ordered inmate Tucker to put his hands behind his back. Inmate Tucker complied with this order. Officer McLeod placed handcuffs on inmate Tucker at this time. All force was stopped at this point. Officer Kenneth Cargle and Officer McLeod escorted Inmate Tucker to the Shift Commander's Office. At approximately 8:15 a.m., Sgt. Sherwin Carter was informed of the incident. Sgt. Sherwin Carter verbally reprimanded Inmate Tucker for Failure to Obey a Direct Order of a DOC Official, which is a violation of Administrative Regulation 403. Sgt. Carter instructed Officers Cargle and Edge to escort Inmate Tucker to the Health Care Unit for an examination and body chart. Inmate Tucker was then processed into Administrative Segregation Holding Cell #104 pending disciplinary action.

Correctional Officer Lizzie McLeod substantiates the testimony of Defendant Wheeler. McLeod was standing on the porch of Dorm #6 when she heard Defendant Wheeler give the Plaintiff a direct order to get up off the sidewalk. Tucker refused to obey the order from Wheeler but did obey McLeod's order to get up off the sidewalk. At this point the Plaintiff became belligerent to Defendant Wheeler and began walking

away.  Wheeler ordered the Plaintiff to report back to her but he continued to walk away.  Wheeler then approached him and grasped his shirt to stop him from walking away.  The Plaintiff pulled away from her in a hostile manner which caused Wheeler to strike the Plaintiff several times on his common peroneal area with her baton.   McLeod then approached the Plaintiff and ordered him to turn around and place his hands behind his back.  McLeod handcuffed the Plaintiff who was then escorted to the Shift Commanders Officer.  (Exhibit 2, McLeod Affidavit).

The Plaintiff was examined for injuries in the clinic where Nurse Maurine Benefield stated on the Emergency Form, Exhibit 4, that there were "swollen areas noted on inmates on (L) leg, (L) arm and back."  No treatment was necessary and the Plaintiff was returned to the custody of Officers Cargle and Edge to be placed in segregation.  In addition to Exhibit 4, see Exhibit 3, Incident Report, VCF 06027.

## SUMMARY JUDGMENT STANDARD

Summary judgment may be granted only if there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56.  In making that assessment, the court must view the evidence in a light most favorable to the non-moving party and must draw all reasonable inferences against the moving party.  *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).  The burden of proof is upon the moving party to establish his prima facie entitlement to summary judgment by showing the absence of genuine issues and that he is due to prevail as a matter of law.  *See Clark & Clark, Inc.*, 929 F.2d 604 (11th Cir. 1991).  Once that initial burden has been carried, however, the non-moving party may not merely rest upon his pleading, but must come forward with evidence supporting each essential element of his claim.  *See Celotex Corp*

*v. Catrett*, 477 U.S. 317 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986); *Barfield v. Brierton*, 883 F.2d 923 (11th Cir. 1989). Unless the plaintiff, who carries the ultimate burden of proving his action, is able to show some evidence with respect to each element of his claim, all other issues of facts become immaterial and the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Bennett v. Parker*, 898 F.2d 1530 (11th Cir. 1990). As the Eleventh Circuit has explained:

> Facts in dispute cease to be "material" facts when the plaintiff fails to establish a prima facie case. "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." [Citation omitted]. Thus, under such circumstances, the public official is entitled to judgment as a matter of law, because the plaintiff has failed to carry the burden of proof. This rule facilitates the dismissal of factually unsupported claims prior to trial.
> 898 F.2d at 1532.

## ARGUMENT

The Plaintiff filed this 42 U.S.C. § 1983 civil action in which alleges that he was physically abused by the Defendant in violation of his constitutional right to be free of cruel and unusual punishment pursuant to the Eighth and Fourteenth Amendments of the United States Constitution while incarcerated in the Ventress Correctional Facility of the Alabama Department of Corrections.

The Eighth Amendment prohibition against cruel and unusual punishment is triggered when a prisoner is subjected to an "unnecessary and wanton infliction of pain." <u>Whitley v. Albers,</u> 475 U.S. 312, 319 (1986). The Supreme Court held in <u>Hudson v. McMillian,</u> 503 U.S. 1 (191992), that "whenever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the

6

core judicial inquiry [in determining whether a prisoner has suffered unnecessary and wanton pain] is that set out in *Whitley:* whether the force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Id. at 6. Thus, summary applications of force are constitutionally permissible when prison security and order, or the safety of other inmates or officers, have been placed in jeopardy. *Whitley,* 475 U.S. at 312 (riot and hostage situation). In extending *Whitley* to all cases involving allegations of force, the Court reasoned:

> Many of the concerns underlying our holding in *Whitley* arise whenever guards use force to keep order. Whether the prison disturbance is a riot or a lesser disruption, corrections officers must balance the need "to maintain or restore discipline" through force against the risk of injury to inmates. Both situations may require prison officials to act quickly and decisively. Likewise, both implicate the principle that " '[p]rison administrators ... should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.' "

*Id.* at 6-7 (citations omitted)

.With these concerns in mind, the Court set out certain factors that should be considered in evaluating whether the use of force was wanton and unnecessary. They include: (1) the need for the application of force; (2) the relationship between the need and the amount of force used; (3) the threat reasonably perceived by the prison official; (4) any efforts made to temper the severity of a forceful response; and (5) the extent of the injury suffered by the inmate. The *Hudson* Court made it clear that the extent of the injury suffered by the inmate is only one of the many factors which should be considered, not a decisive one when it said, "[t]he absence of serious injury is therefore relevant to

the Eighth Amendment inquiry, but does not end it." *Id.* at 7.

In evaluating the challenged conduct of prison officials, a court must keep in mind the paramount concerns of maintaining order and discipline in an often dangerous and unruly environment. *Ort v. White,* 813 F.2d 318, 322 (11th Cir.1987). In this case, Defendant Wheeler used no more force than necessary to regain control of the situation when the Plaintiff refused to comply with her orders that were given to assert control over the Plaintiff to maintain good order and discipline in the prison. In response to her order, the Plaintiff was openly defiant to the point of striking the Defendant and pushing her violently away. He directed remarks toward inmate bystanders that conveyed a contemptuous attitude for the authority that Defendant was trying to assert, saying, "Man, I ain't thinking about that mother fucking shit she's talking about." In response to his refusal to obey her orders and his physical resistance, Defendant Wheeler hit the Plaintiff with her baton a total of three times, hitting him in the back twice and once on his left arm. After the first two blows were administered to the Plaintiff's back, he continued to resist, causing the Defendant to administer the third blow, this time to his upper left arm. After being hit for the third time the Plaintiff stopped resisting and no more blows were administered by the Defendant.

The reasonableness of the Defendant's actions is reflected in the results of the medical examination afterwards in which the nurse noted swelling in the areas where he was hit but the Plaintiff did not require any medical treatment. "[I]f force was applied in a good faith effort to maintain discipline, courts should give great deference to acts taken by prison officials in applying prophylactic or preventative measures intended 'to reduce the incidence of riots and other breaches of prison discipline.'" *McBride v. Rivers,* 170

Fed.Appx. 648, 656 (11th Cir.2006) (quoting *Williams v. Burton,* 943 F.2d 1572, 1576 (11th Cir.1991)). While this deference "does not insulate from review actions taken in bad faith or for no legitimate purpose, it requires that neither judge nor jury freely substitute their judgment for that of officials who have made a considered choice." Ort, 813 F.2d at 322 (quoting *Whitley,* 475 U.S. at 322). Where the only question concerns the reasonableness of the force used by a prison official, the defendant will ordinarily be entitled to judgment as a matter of law. *See* Campbell v. Sikes, 169 F.3d 1353, 1374 (11th Cir.1999) (explaining that "force does not violate the Eighth Amendment merely because it is unreasonable or unnecessary"); *McBride,* 170 Fed.Appx. at 657 (although correctional officers could arguably have used less force after subduing inmate, inmate "failed to produce evidence showing that these measures were taken 'maliciously and sadistically for the very purpose of causing harm.'") (citations omitted).

Clearly, the only inference that can be drawn from the events of 8 June 2006 is that the force was applied by the Defendant in a good-faith effort to maintain or restore discipline, not maliciously and sadistically to cause harm. As such, the use of force by the Defendant did not constitute cruel and unusual punish, and was not a violation of the Plaintiff's Eighth Amendment rights.

## IMMUNITIES

The Plaintiff sued Defendant Wheeler individually and in her official capacity, seeking compensatory damages and injunctive relief. The Defendant raised the defenses of sovereign immunity pursuant to the Eleventh Amendment and Article I, § 14, Alabama Constitution of 1901 as well as Qualified Immunity and State Agent Immunity.

The Eleventh Amendment unequivocally bars suits for money damages against a state by the citizens of that state, *see Florida Association of Rehabilitation Facilities, Inc. v. State of Florida Department of Health and Rehabilitative Services,* 225 F.3d 1208, 1214, 1219 (11th Cir.2000) (citing *Edelman v. Jordan,* 415 U.S. 651, 663, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974)), unless the state waives its Eleventh Amendment immunity or Congress abrogates said immunity. *See Carr v. City of Florence, Ala.,* 916 F.2d 1521, 1524 (11th Cir.1990). Congress has not abrogated Eleventh Amendment immunity in § 1983 cases, nor has the State of Alabama consented to suit. *See id.* at 1525. Eleventh Amendment immunity also extends to state officials sued in their official capacities when, for all practical purposes, " 'the state is the real, substantial party in interest.' " *Id.* at 1524 (quoting *Pennhurst State School and Hosp. v. Halderman,* 465 U.S. 89, 101, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984)). Where an award of damages would be paid by the state, "the state is considered the real party in interest." *Id.* These state defendant are state officials and, thus, by virtue of the Eleventh Amendment are shielded from suit as to all monetary claims asserted against them in their official capacity. Second, because a suit for money damages against a state official in his or her official capacity "is not a suit against the official but rather is a suit against the official's office," Defendant also is not considered a "person" within the meaning of 42 U.S.C. § 1983. *Will v. Michigan Department of State Police,* 491 U.S. 58, 70-71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989).

Sued in her individual capacity also, the Defendant asserts that she is entitled to the protection of qualified immunity. Qualified immunity protects government officials performing discretionary functions from suits in their individual capacities unless their conduct violates "clearly established statutory or constitutional rights of which a

reasonable person would have known." *Dalrymple v. Reno,* 334 F.3d 991, 994 (11th Cir.2003)(quoting *Hope v. Pelzer,* 536 U.S. 730, 739, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002)). In determining whether qualified immunity is appropriate in a given case, "[t]he court must first ask the threshold question whether the facts alleged, taken in the light most favorable to the plaintiffs, show that the government official's conduct violated a constitutional right." *Dalrymple,* 334 F.3d at 995 (citing *Saucier v. Katz,* 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001)).

The state Defendant recognizes that the law of the 11th Circuit precludes a defense of qualified immunity in cases alleging excessive force in violation of the Eighth Amendment because the use of force "maliciously and sadistically to cause harm" is clearly established to be a constitutional violation. *Skrtich v. Thornton,* 280 F.3d 1295, 1301 (11th Cir.2002) citing *Hudson v. McMillian,* 503 U.S. 1 (1992), and *Whitley v. Albers,* 475 U.S. 312 (1986). However, the Defendant urges the court that the circumstances of her situation are so totally different from those in *Skrtich* that the utter preclusion of the defense of qualified immunity is not reasonable. This is particularly true given what, to this counsel, seems to be the cloudy reasoning upon the preclusion of qualified immunity in excessive force cases. The cases clearly hold that a certain amount of force can be used as long as it is not imposed maliciously and sadistically to cause harm. Under the Eighth Amendment, force is deemed legitimate in a custodial setting as long as it is applied "in a good faith effort to maintain or restore discipline [and not] maliciously and sadistically to cause harm." *Whitley v. Albers,* 475 U.S. 312, 320-21, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986) (quoting *Johnson v. Glick,* 481 F.2d 1028, 1033 (2d Cir.1973)); *see also Hudson v. McMillian,* 503 U.S. 1, 8, 112 S.Ct. 995, 117 L.Ed.2d 156

(1992). If, indeed, there are instances where force can be used lawfully, then the preclusion of the defense whenever inmates whelp over their treatment is not proper.

The state Defendant asserts that any state law claims against her in her official capacities are barred by Article I, § 14 of the Alabama Code of 1901.

The state Defendant also asserts State-Agent Immunity to any state law claims against her in her individual capacities. In analyzing cases in which a defendant presents the trial court with a State-agent-immunity claim on a summary-judgment motion, this Court applies a burden-shifting analysis based on the evidence presented to the trial court. *Ex parte Wood,* 852 So.2d at 709 (citing *Ryan v. Hayes,* 831 So.2d 21, 28 (Ala.2002)). In order to establish State-agent immunity, the party seeking to assert the defense must present evidence indicating that the claims asserted against him or her arise from the performance of a discretionary act. *Ex parte Wood,* 852 So.2d at 709 (quoting *Ex parte Alabama Dep't of Transp.,* 764 So.2d 1263, 1268-69 (Ala.2000)). The Alabama Supreme Court restated the standard for determining whether an act is discretionary for purposes of determining the applicability of State-agent immunity in *Ex parte Cranman,* 792 So.2d 392 (Ala.2000). If the defendant establishes that the conduct made the basis of the claim against him or her falls within a category of conduct giving rise to State-agent immunity, then the burden shifts to the plaintiff to show that the defendant acted in a manner that precludes the application of State-agent immunity. *Ex parte Wood,* 852 So.2d at 709 (quoting *Ryan v. Hayes,* 831 So.2d at 28); *see also Cranman,* 792 So.2d at 405 ( "a State agent *shall not* be immune from civil liability in his or her personal capacity ... when the State agent acts willfully, maliciously, fraudulently, in bad faith, beyond his or her authority, or under a mistaken interpretation of the law").

## CONCLUSION

Defendant Gloria Wheeler respectfully submits that there is no genuine issue of fact and that she is entitled to a judgement as a matter of law.

RESPECTFULLY SUBMITTED,

TROY KING
ATTORNEY GENERAL

/s/ *Jack Wallace, Jr.*
Jack Wallace, Jr.
ASSISTANT ATTORNEY GENERAL

ADDRESS OF COUNSEL:
Office of the Attorney General
11 South Union Street
Montgomery, AL 36130
(334) 242-7555
(334) 242-2433

## CERTIFICATE OF SERVICE

I hereby certify that I have, this the 25th day of July, 2007, electronically filed the foregoing with the Clerk of Court using the CM/ECF and served a copy of the foregoing upon the Plaintiff, by placing same in the United States Mail, postage prepaid and properly addressed as follows:

Henry Lee Tucker, AIS 185861
Ventress Correctional Facility
P.O. Box 767
Clayton, AL 36016

/s/ *Jack Wallace, Jr.*
Jack Wallace, Jr.
ASSISTANT ATTORNEY GENERAL